UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **BRFHH Shreveport, L.L.C. d/b/a University Health Shreveport and Vantage Health Plan, Inc.,** | Case No. 5:15-cv-02057 |
| Plaintiffs; | Judge Elizabeth E. Foote |
| v. | Mag. Judge Mark L. Hornsby |
| **Willis-Knighton Medical Center d/b/a Willis-Knighton Health System,** | |
| Defendant. | |

# DEFENDANT WILLIS-KNIGHTON MEDICAL CENTER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL P. KESSLER

Lamar P. Pugh
Attorney Identification No. 20070
PUGH, PUGH, & PUGH, LLP
333 Texas Street, Suite 2100
Shreveport, Louisiana 71101
Telephone: 318-227-2270
Telecopier: 318-227-2273
lamar@thepughlawfirm.com

Lesley C. Reynolds*
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, D.C. 20001
Telephone: 202-662-0200
Telecopier: 202-662-4643
lesley.reynolds@nortonrosefulbright.com

*Admitted *pro hac vice*

Layne E. Kruse (T.A.)*
Darryl W. Anderson*
Eliot F. Turner*
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246
layne.kruse@nortonrosefulbright.com
darryl.anderson@nortonrosefulbright.com
eliot.turner@nortonrosefulbright.com

Marc B. Collier*
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd, Suite 1100
Austin, Texas 78701
Telephone: 512-474-5201
Telecopier: 512-536-4598
marc.collier@nortonrosefulbright.com

*Attorneys for Defendant Willis-Knighton Medical Center
d/b/a Willis-Knighton Health System*

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION ................................................................................................................. 1

ARGUMENT AND AUTHORITIES ................................................................................... 2

    I.    Plaintiffs Sidestep Willis-Knighton's Arguments About Professor Kessler's "Past Acquisition" Opinions and Essentially Concede Willis-Knighton's Point. ......................................... 2

    II.    Professor Kessler's Opinions About a Broad "Scheme" to Transfer Commercially Insured Patients Have No Basis in Fact. ..................................................................................................... 4

    III.    Plaintiffs Fail to Demonstrate How the Academic Literature Fits the Facts of this Case. ............................................................... 5

    IV.    Plaintiffs Fail to Show That The Academic Literature on Horizontal Consolidation and Vertical Integration Concludes that the Impacts Identified by Professor Kessler are "Significantly Likely." ............................................................................ 8

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burst v. Shell Oil Co.*,
   Civ. Action No. 14-109, 2015 WL 3755953 (E.D. La. June 16, 2015),
   *aff'd*, 650 F. App'x 170 (5th Cir. 2016) ................................................................. 8

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ................................................................................................ 8

*Guillory v. Domtar Indus. Inc.*,
   95 F.3d 1320 (5th Cir. 1996) ............................................................................. 4, 5

*Johnson v. Arkema, Inc.*,
   685 F.3d 452 (5th Cir. 2012) .............................................................................. 10

*Manpower, Inc. v. Ins. Co. of Pa.*,
   732 F.3d 796 (7th Cir. 2013) ................................................................................ 5

*Matosky v. Manning*,
   428 F. App'x 293 (5th Cir. 2011) ......................................................................... 3

*Moore v. Int'l Paint, LLC*,
   547 F. App'x 513 (5th Cir. 2013) ......................................................................... 4

*Orthoflex, Inc. v. ThermoTek, Inc.*,
   986 F. Supp. 2d 776 (N.D. Tex. 2013) ................................................................. 5

*Randolph v. Laeisz*,
   896 F.2d 964 (5th Cir. 1990) ................................................................................ 5

*Routh v. Bank of Am., N.A.*,
   No. SA-12-CV-244-XR, 2013 WL 4040753 (W.D. Tex. Aug. 7, 2013) ............... 3

*United States v. City of Miami, Florida*,
   115 F.3d 870 (11th Cir. 1997) .............................................................................. 5

Defendant Willis-Knighton Medical Center ("Willis-Knighton") submits this reply memorandum of law in further support of its Motion to Exclude Expert Testimony of Daniel P. Kessler ("Motion"). Doc. 425.

## INTRODUCTION[1]

Plaintiffs' Opposition to Willis-Knighton's Motion is an exercise in obfuscation and misdirection. Willis-Knighton's Motion detailed four separate reasons for excluding Professor Kessler's testimony. Instead of addressing Willis-Knighton's actual arguments, Plaintiffs' Opposition simply mimicked the content of Professor Kessler's report, doubled down on his flawed analysis and irrelevant literature, and stuck to the position that it is permissible for their experts to opine on unsupported allegations. After cutting away the fat, it is clear from Plaintiffs' Opposition that Professor Kessler's opinion testimony should be excluded.

***First***, as Plaintiffs admit, Professor Kessler only attempted to analyze **one** "past acquisition," which occurred outside the limitations period and involved physicians outside the relevant product markets. Yet, he seeks to offer an opinion about the anticompetitive impacts of other "past acquisitions" that he did not study and could not identify. These opinions are neither relevant, nor reliable.

***Second***, contrary to Plaintiffs' suggestion, there is no evidence of a "scheme" to transfer all the commercially insured business of LSU Health Shreveport faculty physicians from University Health to Willis-Knighton. While Plaintiffs believe that

---

[1] Citations to "Def.'s Br. at __" are to Willis-Knighton's Memorandum of Law in Support of Its Motion to Exclude Expert Testimony of Daniel P. Kessler. *See* Doc. 425-1. Citations to "Def.'s Ex. __" are to the Declaration of Lamar P. Pugh in support of Willis-Knighton's Motion to Exclude Expert Testimony of Daniel P. Kessler. Doc. 425-2. Citations to "Pls.' Opp. at __" are to Plaintiffs' Joint Opposition to Willis-Knighton's Motion to Exclude Expert Testimony of Daniel P. Kessler. Doc. 447.

1

it is permissible for a liability expert, like Professor Kessler, to base his opinion on unsupported assumptions, the Fifth Circuit disagrees.

*Third*, the academic literature on which Professor Kessler based his opinions fails to fit the facts of the case, and Plaintiffs' attempts to draw parallels are superficial and flawed.

*Fourth*, the academic literature does not conclude that the anticompetitive impacts of horizontal consolidation and vertical integration identified by Professor Kessler are *significantly likely*. Though Plaintiffs pick and choose language from supposedly favorable studies to support Professor Kessler's conclusion and discount studies to the contrary, a careful review of the literature demonstrates that the impacts identified by Professor Kessler are **not** *significantly likely*.

## ARGUMENT AND AUTHORITIES

**I.  Plaintiffs Sidestep Willis-Knighton's Arguments About Professor Kessler's "Past Acquisition" Opinions and Essentially Concede Willis-Knighton's Point.**

Plaintiffs contend that Professor Kessler should be able to opine about the competitive impacts of Willis-Knighton's past "physician practice acquisitions." Pls.' Opp. at 11–13. Willis-Knighton identified in its brief how Professor Kessler's opinions about "past acquisitions" were irrelevant and unreliable because the only "past acquisition" that Professor Kessler assessed is outside of the relevant product markets and limitations period, making an opinion about it irrelevant, and any opinion about unidentified and unanalyzed other "past acquisitions" would be no more than speculation, making it unreliable. Def.'s Br. at 18–21.

2

In their Opposition, Plaintiffs did not dispute that the only "past acquisition" that Professor Kessler studied was the affiliation between Willis-Knighton and Gastroenterology Associates and that that affiliation is both outside the product markets alleged in the Amended Complaint and outside the limitations period. Pls.' Opp. at 12–13; Def.'s Br. at 18–20. Instead, Plaintiffs now contend that this particular "acquisition" is merely "an example of the terms on which physicians join the [Willis-Knighton] Physician Network" and is "perfectly representative" of the other "past acquisitions" by Willis-Knighton. Pls.' Opp. at 12–13. Neither Plaintiffs nor Professor Kessler cite to any evidence to demonstrate how the Gastroenterology Associates "acquisition" is "perfectly representative" of anything. Instead, Plaintiffs offer hollow statements about what the "record shows" or makes "straightforward" without citing the record. *See* Pls.' Opp. at 11–12.

What remains unaddressed in the Opposition is how Professor Kessler can reliably opine about purported anticompetitive impacts of "acquisitions" that he did not and could not even identify (and certainly did not assess). This is because he cannot. *See Matosky v. Manning*, 428 F. App'x 293, 298 (5th Cir. 2011) (per curiam) (holding that the district court did not abuse its discretion in determining that an expert's conclusory assertion was unreliable and in excluding the expert's testimony); *Routh v. Bank of Am., N.A.*, No. SA-12-CV-244-XR, 2013 WL 4040753, at *5 (W.D. Tex. Aug. 7, 2013) ("An expert's unsupported conclusory assertion may be excluded as unreliable."). Because Professor Kessler's opinions about the purported "acquisition" of Gastroenterology Associates are irrelevant and his

3

opinions about other unidentified "past acquisitions" are unreliable, his opinions on "past acquisitions" should be excluded.

## II. Professor Kessler's Opinions About a Broad "Scheme" to Transfer Commercially Insured Patients Have No Basis in Fact.

Plaintiffs attempt to style Professor Kessler's opinions about a broad "scheme" to transfer the commercially insured business of LSU Health Shreveport faculty physicians to Willis-Knighton as being based on a "competing version[] of the facts" and argue that they should therefore be permitted. Pls.' Opp. at 20.

However, the "scheme" to transfer all the commercially insured patients of LSU Health Shreveport faculty physicians from University Health to Willis-Knighton is not a competing version of the *facts*. It is not a fact at all—it is a wholly unsupported allegation. What is competing are the facts in the record (on which Willis-Knighton's experts opined) and the unsubstantiated allegations of Plaintiffs (on which Professor Kessler and Plaintiffs' other experts opined). There is no evidence in the record to support the "scheme" that has been alleged by Plaintiffs. *See* Def.'s Br. at 16–17.[2] As a result, Professor Kessler's opinions about Plaintiffs' alleged "scheme" are based on unsupported allegations and amount to nothing more than speculation and conjecture, warranting exclusion. *See Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) ("Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all. Both analyses result in pure speculation."); *Moore v. Int'l Paint, LLC*, 547 F. App'x

---

[2] *See also* Doc. 459, Def.'s Mem. of Law in Opp. to Pls.' Mot. to Exclude Certain Testimony of Robert D. Willig at 7–8 n.13; Def.'s Reply In Support of Its Motion for Summary Judgment on University Health's Claims.

4

513, 515 (5th Cir. 2013) ("When an expert's testimony is 'not based upon the facts in the record but on altered facts and speculation designed to bolster [a party's] position,' the trial court should exclude it." (quoting *Guillory*, 95 F.3d at 1331)).

Perhaps recognizing that Professor Kessler's opinions are based on unsupportable allegations, Plaintiffs claim that Professor Kessler's role as an expert permits him to blindly rely on assumptions without regard for their veracity. Pls.' Opp. at 19. In support of this argument, Plaintiffs cite two cases, *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776 (N.D. Tex. 2013) and *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796 (7th Cir. 2013), that permitted *damages experts* to assume certain facts about liability when opining on damages. Professor Kessler is not a damages expert; he is a purported liability expert. Courts have long held that liability experts cannot opine on allegations that are unsupported by the record. *See, e.g.*, *United States v. City of Miami, Florida*, 115 F.3d 870, 873 (11th Cir. 1997) (noting that an economist's "calculations are improper when they are not based upon record evidence and it is confusing as to how the economist reached his result." (citing *Randolph v. Laeisz*, 896 F.2d 964 (5th Cir. 1990)).

### III. Plaintiffs Fail to Demonstrate How the Academic Literature Fits the Facts of this Case.

Willis-Knighton's Motion addressed each of the fourteen pieces of literature on which Professor Kessler based his opinions and explained why each fails to fit the facts of this case. Def.'s Br. at 4–14. Not one of those pieces of literature study part-time, non-exclusive physician services arrangements (the arrangements at the heart of this case)—a fact which is not in dispute. *See* Def.'s Ex. 1, Kessler Dep.

5

165:11–15 ("That's—that's not really a topic that I think could be studied empirically using the types of data that researchers use because it's not a piece of information that would generally be available to them.")  While Plaintiffs argue that this does not matter because "these contracts are for FTEs of physicians," Plaintiffs' argument is beside the point.  The point is Professor Kessler and Plaintiffs failed to demonstrate that the cited literature fits the Willis-Knighton and LSU Health Shreveport arrangement (even if that arrangement is viewed as contracts for FTEs). This is because it does not.

    First, Willis-Knighton demonstrated that many of the studies on which Professor Kessler relied analyzed hospital mergers, and that Professor Kessler admitted that the arrangement between Willis-Knighton and LSU Health Shreveport is not a hospital merger.  *See* Def.'s Br. at 5–6; Def.'s Ex. 1, Kessler Dep. 161:11–13 ("the physician services contracts are not a merger of hospitals"). Plaintiffs did not respond.

    Next, Willis-Knighton showed that many of the other studies on which Professor Kessler relied assessed the impacts of an increase in market concentration, and that Professor Kessler undertook no analysis to determine if the arrangement between Willis-Knighton and LSU Health Shreveport would result in an increase in market concentration in any relevant market.  *See* Def.'s Br. at 7–8; Def.'s Ex. 1, Kessler Dep. 162:21–163:3 ("I didn't define any relevant antitrust markets in my report.  That would be—it requires a fact-intensive inquiry that

6

wasn't part of my assignment.").[3] Plaintiffs attempt to downplay Willis-Knighton's arguments with generic and unsupported statements, including that Professor Kessler explained how the agreements "more broadly" increased concentration, how the increase in concentration "is obvious," and how that increase "is evident without a determination of relevant market or precise market shares." Pls.' Opp. at 14. Without actually determining whether the arrangement between Willis-Knighton and LSU Health Shreveport increased concentration and instead just assuming that it did, Professor Kessler's opinions based on studies assessing the impacts of increases in concentration are unreliable.

Then, Willis-Knighton established that two of the studies on which Professor Kessler relied defined "integration" in different ways than Professor Kessler did in his expert report and that Professor Kessler did not demonstrate that the arrangement between Willis-Knighton and LSU Health Shreveport fit those definitions of integration. Pls.' Opp. at 14–16. Instead of refuting this point, Plaintiffs artificially parsed the studies to draw tenuous parallels. Plaintiffs, for example, argued that Professor Kessler's definition of integration is actually "more demanding" than one of the studies and that there is "minimal chance" that the LSU Health Shreveport faculty physicians would not qualify as "integrated" under the definition in the other study. Def.'s Br. at 9–10; Pls.' Opp. at 15 n.2. In lieu of

---

[3] While Professor Kessler cited a "61.9 percent share that Willis-Knighton" reported in a 2015 SEC disclosure, he did not do any analysis of whether Willis-Knighton's arrangement with LSU Health Shreveport increased that market share and he admitted that the cited market share relates to "inpatient and outpatient hospital services," which are not relevant product markets. See Pls.' Opp. at 12; Def.'s Ex. 2, Kessler Initial Report at 25 n.78; Dkt. 132 ¶¶ 84–116 (identifying the alleged product markets).

7

demonstrating that the arrangement between Willis-Knighton and LSU Health Shreveport actually meets the definition of integration in the two studies referenced by Willis-Knighton, Plaintiffs ask the Court to take their and Professor Kessler's word for it. This fails under *Daubert*. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Last, Willis-Knighton showed that Professor Kessler relied on studies that did not support his conclusion, and Plaintiffs acknowledge as much—they do not conclude that vertical integration raises prices, lowers quality, or shifts referrals. Def.'s Br. at 10–11; Pls.' Opp. at 11.

In short, Plaintiffs have failed to connect the studies on which Professor Kessler relied to the facts of this case, making his opinion unreliable. *See, e.g. Burst v. Shell Oil Co.*, Civ. Action No. 14-109, 2015 WL 3755953, at *16 (E.D. La. June 16, 2015), *aff'd*, 650 F. App'x 170 (5th Cir. 2016) ("[W]hen an expert exhibits wholesale reliance on [factually dissimilar] studies without any differentiation or attempt to explain why the studies remain relevant in light of their inconsistency with the facts of the case, the methodology is unreliable.").

**IV.  Plaintiffs Fail to Show That The Academic Literature on Horizontal Consolidation and Vertical Integration Concludes that the Impacts Identified by Professor Kessler are "Significantly Likely."**

To bolster the premise of all of Professor Kessler's opinions—that horizontal consolidation and vertical integration are *significantly likely* to lead to increased prices, lower quality care, and shifts in referrals—Plaintiffs cherry picked favorable

soundbites from certain studies on which Professor Kessler relied and summarily discounted studies that are unfavorable. Pls.' Opp. at 16–18.

For example, Plaintiffs contest Willis-Knighton's argument that the *Handbook of Health Economics* (that Professor Kessler cited in support of his opinions) does not demonstrate that the impacts that Professor Kessler identified are significantly likely. In their Opposition, Plaintiffs stated that "74 percent of the combinations reviewed in the chapter resulted in price increases that are 'significant' and 'quite large' . . . ." *Id.* at 17. This misrepresents the survey. The survey never found that "74 percent" of hospital combinations resulted in price increases. *See* Def.'s Br. at 13–14. The chapter surveyed nine studies. In one of those nine studies, the authors found no impact on prices from the hospital mergers studied. In the remaining eight studies, the authors found a price impact in only a majority of the hospital mergers studied, and in a majority of that majority, the authors found a significant price increase in 17 of 23 of the hospital mergers studied. It is clear that the *Handbook of Health Economics* found price impact in far less than "74 percent" of total hospital mergers. In reality, the literature demonstrates that, at best, the competitive impacts identified by Professor Kessler may or may not occur when hospitals merge.

Plaintiffs also attempted to dismiss other studies that debase Professor Kessler's premise by calling them "old," discounting their conclusions, and generically touting other studies. Pls.' Opp. at 16–17. Plaintiffs' attempt to nit-pick those studies does not change their conclusions, which are that in a number of cases

9

horizontal consolidation and vertical integration do not have the impacts identified by Professor Kessler. While Professor Kessler wants to characterize his premise—that it is *significantly likely* that horizontal consolidation and vertical integration will lead to increased prices, lower quality, and shifts in referrals—as the state of play in healthcare academia, that is demonstrably not the case. And for that reason, Professor Kessler's opinions should be excluded from trial. *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 460 (5th Cir. 2012) (expert opinion is unreliable when based on proposition not generally accepted in the scientific community).

## CONCLUSION

Because Professor Kessler's opinions are irrelevant and unreliable, Willis-Knighton respectfully requests that the Court exclude his testimony from trial.

Dated: November 10, 2017

Layne E. Kruse (T.A.)*
Darryl W. Anderson*
Eliot F. Turner*
Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246
layne.kruse@nortonrosefulbright.com
darryl.anderson@nortonrosefulbright.com
eliot.turner@nortonrosefulbright.com

Lesley C. Reynolds*
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, D.C. 20001
Telephone: 202-662-0200
Telecopier: 202-662-4643
lesley.reynolds@nortonrosefulbright.com

*Admitted *pro hac vice*

Respectfully submitted,

*/s/ Lamar P. Pugh*
Lamar P. Pugh
Attorney Identification No. 20070
Pugh, Pugh & Pugh L.L.P.
333 Texas Street, Suite 2100
Shreveport, Louisiana 71101
Telephone: 318-227-2270
Telecopier: 318-227-2273
lamar@thepughlawfirm.com

Marc B. Collier*
Norton Rose Fulbright US LLP
98 San Jacinto Blvd, Suite 1100
Austin, Texas 78701
Telephone: 512-474-5201
Telecopier: 512-536-4598
marc.collier@nortonrosefulbright.com

*Attorneys for Defendant Willis-Knighton Medical Center
d/b/a Willis-Knighton Health System*

11

## CERTIFICATE OF SERVICE

I certify on November 10, 2017 I served a copy of this document on counsel for Plaintiffs by electronic means.

*/s/ Lamar P. Pugh*
Lamar P. Pugh
