UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **BRFHH SHREVEPORT LLC** | **CASE NO. 5:15-CV-02057** |
| **VERSUS** | **JUDGE FOOTE** |
| **WILLIS-KNIGHTON MEDICAL CENTER** | **MAGISTRATE JUDGE HORNSBY** |

## MINUTES OF COURT:
### Motion Hearing (evidentiary oral argument)

| | | | |
|---|---|---|---|
| Date: | August 13, 2018 | Presiding: | Judge Elizabeth E. Foote |
| Court Opened: | 9:00 a.m. | Courtroom Deputy: | Kathy Keifer |
| Court Adjourned: | 6:00 p.m. | Court Reporter: | Barbara Simpson |
| Statistical Time: | 07:30 | | |

### APPEARANCES

| | | |
|---|---|---|
| David Ettinger and Jerry Edwards | For | BRFHH Shreveport LLC, Plaintiff |
| James Chastain Jr, Christopher Kelly, Daniel Storino, Reginald Goeke, Scott Zimmer, and Robert Bloch | For | Vantage Health Plan Inc, Plaintiff |
| Layne Kruse, Lamar Pugh, Darryl Anderson, Eliot Turner, and Lesley Reynolds | For | Willis-Knighton Medical Center, Defendant |

### PROCEEDINGS

Oral Argument re:  (Rec. Doc. 425, 432 and 437) Daubert Motions

### COMMENTS, RULING:

Dr. William Cleverley was called by Willis-Knighton to testify. After testimony and evidence submitted, the Court **GRANTED** [437] Plaintiffs' Daubert motion to exclude portions of Dr. Cleverley's report.  The Court noted that Dr. Cleverly is clearly qualified as an expert; his qualifications have not been challenged by the Plaintiffs.  However, portions of Dr. Cleverly's

report will be excluded because, as the Court found, Dr. Cleverley's report failed to fully reveal his methodology.  Dr. Cleverly created his own metric, which he asserts is superior to the adjusted discharge metric more widely used in this industry.  No one in the industry employs Dr. Cleverly's metric, and the Court finds the calculations cannot be replicated because insufficient data was disclosed.  Even the supplemental information disclosed by the defense in support of Dr. Cleverly's expert opinion is insufficient to allow a replication of his calculations.  Thus, these particular opinions fail to satisfy both Rule 702, as well as the agreement reached between the parties to disclose sufficient underlying data so that each of the parties' respective experts could replicate the calculations made by the opposing expert.  Defense counsel objected to the ruling.

Thereafter, the Court heard oral argument regarding Defendant's Daubert motion on Daniel Kessler. [425].  The Court read an email from Layne Kruse into the record to memorialize Willis-Knighton's decision not to challenge D. Kessler's opinions about a broader scheme being unsupported by the facts.

For reasons orally stated, and after a thorough review of D. Kessler's opinions, Willis-Knighton's Daubert motion [425] was **DENIED**.  Willis-Knighton argued, in part, that D. Kessler should be excluded because he relied on academic papers to reach his conclusion when those academic papers and the underlying studies are so dissimilar from the facts of this case as to render their applicability, and by extent his ultimate conclusion, irrelevant and unreliable.  The Court was unpersuaded by Willis-Knighton's contention that D. Kessler's testimony fails under the guidance set forth by the Supreme Court in General Electric v. Joiner, 522 U.S. 136 (1997).  Joiner entailed experts applying a correct and valid methodology to dissimilar, and thus inapplicable, facts, whereas here, if a scheme is proved to exist (which is a fact question to be determined by the jury), Kessler opines on the effect of that scheme on the market and BRFHH.  He does not opine that the contracts will *actually have* anticompetitive effects, but rather offers an opinion on the *likely* effects of the contracts from an economics standpoint, as suggested by economic literature.  D. Kessler did not rely solely on his extensive healthcare economics experience, but rather he used the underlying economic research to support his conclusion of the likely impact of Willis-Knighton's alleged anticompetitive actions, if those actions are demonstrated at trial.  Thus, the underlying economic research supporting D. Kessler's opinion, which analyzes the health care market, quality of care, vertical integration, and horizontal integration, is applicable to the facts of this case.  Furthermore, even though some of the research deals specifically with mergers, it is still relevant to the overall discussion of the effects of competition in a particular market.  The Court found there is not the same analytic gap between the data and D. Kessler's proffered opinion, as there was in Joiner.

The Court noted that although Willis-Knighton criticized D. Kessler for using literature involving mergers, experts from both sides have used the FTC guidelines on mergers to explore whether certain conduct may lead to anticompetitive effects.

The contracts at issue will be put before the jury, and it will be for the jury to determine what these contracts mean.  The experts from both sides can propose their respective interpretations to the jury and allow the jury to decide whether there is vertical or horizontal integration.

While the Court will permit D. Kessler to use the reference to the gastroenterology clinic as illustrative, Willis-Knighton may request an instruction to the jury to ensure the jury does not mistakenly assume that gastroenterology is one of the contracts at issue.

The Court heard oral argument on Plaintiffs' Daubert motion to exclude Robert D. Willig, Ph.D [432].  Mr. Ettinger read into the record his email dated August 7, 2018 which limited the scope of his objections to Dr. Willig's testimony, withdrawing his prior argument that Dr. Willig should be excluded because his opinion was limited to the four master service agreements and five clinics.

For reasons orally stated, and after a thorough review of Dr. Willig's opinions, the motion [432] was **GRANTED IN PART and DENIED IN PART**.  Dr. Willig may opine as to horizontal and vertical integration in the context of the master service agreements. Again, the jury will have the contracts in front of it and can reach its own conclusions as to the degree of control that Willis-Knighton maintains over the physicians, clinics and patients; the jury will reach its own conclusion as to whether or not there is a vertical or horizontal integration.  That Dr. Willig did not examine Mr. Daigle's statements or review other deposition testimony goes to the weight of his testimony, not its admissibility.  His conclusions on the lack of anticompetitive effects of the master service agreements, as expressed in paragraphs 11, 30 and 32 are admissible.  However, as to paragraph 11, Dr. Willig cannot use the phrase "will likely result in pro-competitive benefits."  Dr. Willig cannot testify as to his conclusions in paragraph 24, as those are Willis-Knighton's allegations disguised as an expert conclusion.

Thereafter, the parties updated the Court on their agreements as to which opinions and/or reports were rendered unnecessary in light of the Court's rulings on Michael Pugh's main report.  As to Pugh's rebuttal report, the parties agreed to include the third and fourth sentences in section 1.1; sections 2.10 – 2.22; and all of Appendix A.  Dahl is withdrawn as an expert witness.  Finally, M. Kessler's first report is withdrawn.  As to her rebuttal report, the parties agreed to include p. 1, I & II; and p. 11, C through p. 33, including all attachments

The Court adjourned at 6:00 p.m.


**Filings**: Witness List